Huey, Stone & Patton, and Edw. L. Ball, Bessemer, for appellant.

74 So.2d 912

Roxiana CLARKE

v.

Margaret EDWARDS.

6 Div. 451.

Supreme Court of Alabama.

Oct. 7, 1954.

Lipscomb & Lipscomb and L. Herbert Etheridge, Bessemer, for appellee.

GOODWYN, Justice.

Benjamin Edwards, deceased, had in force at the time of his death a $3,000 life insurance policy. The policy contained the following provision:

"Beneficiary: The beneficiary for life insurance shall be the person or persons designated on the Employer's records in accordance with the Employee's election. The Employee may from time to time change the beneficiary, without the consent of any previously designated beneficiary, by a written notice signed by the Employee and filed with the Employer. Upon receipt of said notice by the Employer a record of such change will be entered by the Employer upon the insurance records maintained by it in connection with the insurance under the group policy and unless such entry is made the change shall not be effective."

The beneficiary designated pursuant to said provision is "Margaret Edwards, daughter. (With the right reserved to change the beneficiary)".

A dispute arose between said Margaret Edwards and one Roxiana Clarke as to which of them was entitled to the proceeds of the policy. Margaret bases her claim on the fact that she is Benjamin's daughter and is the designated beneficiary. Whether Margaret is, in fact, Benjamin's daughter is disputed. Roxiana claims to be Benjamin's common-law wife and the owner of the policy by virtue of an *inter vivos* gift of it to her.

To resolve these conflicting claims, Margaret brought suit in equity against Roxiana and the insurance company seeking a decree "that she is the designated beneficiary of the life insurance policy", that "as such designated beneficiary she is entitled to the principal sum due under said policy", and that the insurance company be ordered to pay said sum to her. A further prayer is that Roxiana be directed to deliver the insurance policy to complainant. The insurance company answered the bill and also filed a cross-bill, in the nature of a bill of interpleader, admitting liability for the face amount of the policy and paying said sum into court. Roxiana filed an answer to the effect that "her correct name is Roxanna Edwards" and that when Benjamin died she was "his lawful wife and had been his wife for more than 9 years next preceding" his death; and that prior to his death he "transferred and gave" to her "all of his right, title and interest" in the policy which "reserved to the said Benjamin the right to change the designated beneficiary".

On the issues thus made up, the trial court proceeded to a hearing, after which a decree was rendered in favor of complainant, Margaret Edwards. Roxiana prosecutes this appeal from that decree.

After introduction in evidence of the policy and the instruments showing the election of insured to come under the group policy, the designation by insured of Margaret as beneficiary, and the certificate issued by the insurance company designating Margaret as beneficiary, counsel for Margaret took the position that there was thus made out "a prima facie case of our right to the proceeds under the policy" and rested. The position then taken on behalf of Roxiana was that she was entitled to a decree in her behalf since there was "no testimony in this case that this policy was the property of this complainant, and that this is the complainant named in the policy"; and, further, that "there is not a thing before the court that proves this woman is entitled to the policy at all". Thereupon, over objection, testimony on this point was offered and received on behalf of Margaret. There were two witnesses, Henrietta Burton and Margaret. It seems clear that the purpose of their testimony was to establish Margaret as the daughter of the insured

and the person designated by him as beneficiary, although on cross and redirect examination of Henrietta Burton, questions were asked bearing on the marital status of Roxiana and the insured. Upon conclusion of their testimony, the court directed the following inquiry to counsel for Roxiana:

"Let me ask you this in connection with this: The name in the policy is as to the daughter. Is it your theory that you can show she is not the daughter, to void the policy?"

And then occurred the following:

"Mr. Ball: No, sir. But to impeach the witness. I want to show her name is not Edwards, and she knew it when she brought this lawsuit as Margaret Edwards.

"The Court: If she has a valid insurance policy made out to her why wouldn't it be her property? Why wouldn't she be entitled to recover?

"Mr. Ball: Judge, I will state the theory of my lawsuit so I can get right down to the issue. The Equitable Life Assurance Company or Society of the United States, one of the respondents in this case, has come into court, and the Supreme Court of Alabama has held that that is in the policy for the protection of the insured alone, and for nobody else. Now we are going to prove that this respondent's name is Roxanna Edwards, formerly Rosanna Cox, that for more than eight years she was the wife of Benjamin Edwards. We are going to prove that he made her a gift of this policy, by assigning and devising any property in the policy into the respondent, and the only burden we have to carry is to prove that they had been living together.

"The Court: He can give his property to whom he wishes. But in this policy of insurance he has got to comply with the provisions of the policy. He has got to give notice and execute an assignment to change the beneficiary. As I understand the rule, he could

change it from her to this woman here, but in order to do that he has to sign a request to the company and submit a demand for a change and have it attached changing the beneficiary. He has to comply with the terms and conditions of the policy.

"(Then follows arguments by both counsel for the complainant and respondent.)

"The Court: I think that this contract explains the whole matter. It seems to me that he can give it to whom he pleases, but he's got to comply with the contract.

"Mr. Ball: If the Court is of that opinion now, I would like to make a showing to the Court of what I offer to prove.

"The Court: All right.

"Mr. Ball: And then I would like to submit my authorities without having to take all my testimony.

"The Court: Suppose you state what you expect to prove, and we will assume that is correct."

Counsel for Roxiana then made a statement of what he was offering to prove, which, in substance, was that Roxiana was the common-law wife of the insured and that the insured had made an *inter vivos* gift of the policy to Roxiana. Counsel for Margaret made a statement "in rebuttal" to the effect that Roxiana was held out and known in the neighborhood where she and the insured lived as the insured's "housekeeper" and not as his wife; that insured, "on one occasion a short time before his death exhibited the policy, or exhibited "the certificate showing the name of Margaret Edwards and stated in the presence of Roxanna Clarke that this policy was for his daughter, and he wanted her to take it"; that "when it was found out by wire that Ben Edwards had died, that Roxanna told Margaret, and Carrie Collins [funeral director] and the driver of the automobile working for Carrie Collins, that the policy or the certificate in which Margaret Edwards was named as beneficiary was at home and * *

that she should go and get the policy and deliver it to Margaret"; that "on the next day when Carrie Collins and Margaret requested that the insurance policy certificate be delivered, that she then informed both of them that she had misplaced it, and also she wasn't going to give it to them unless they could take it away from her; and that she said she wasn't the wife,—in discussing the funeral arrangements and the selection of the casket, she told Carrie Collins, the funeral director, and Margaret Edwards, that she was not his wife; he didn't leave her anything, and she wasn't going to have anything to do with the funeral, and wouldn't come and view the body."

Then there occurred the following in concluding the trial:

"Mr. Ball: Judge, as I understand, the Court has indicated you are going to hold we are confined to the provisions of the policy: That is what I offer to show.

"The Court: You are going to present authorities?

"Mr. Ball: Yes, sir.

"Mr. Lipscomb: And include in that order that this is the certificate or the insurance policy; it purports to be on its face.

"Mr. Ball: This is the instrument by which the property is given by him (indicating).

"Mr. Lipscomb: And that the general reputation in the community where Ben Edwards has lived ever since the birth of this child Margaret, that he has recognized her as his daughter; that he has consistently referred to her as his daughter.

"Mr. Ball: I want to object to that. That has no legal effect, regardless; or if he called her his aunt; if he named her in the policy she is still the beneficiary.

"The Court: If he held her out, it might shed some light on the question of whether or not she was such.

"Mr. Lipscomb: That is right. I also wish to show or we expect to prove that Margaret Edwards has been supported by Ben Edwards all of her life, and he was supporting her up to the time of his death."

The note of testimony provided as follows:

"This cause is submitted in behalf of Complainant, upon the original Bill of Complaint and testimony of Roxiana Edwards, Heneritta Burton, Margaret Edwards and Respondent, the Equitable Life Assurance Society of the United States' exhibits 'A', 'B' and 'C'.

*   *   *   *   *   *

and in behalf of Respondent, upon Respondent's answer and testimony offered to be shown and accepted by the Court as an agreed statement of facts."

Although the note indicates that Roxiana testified, the record does not disclose that she took the stand. We have already referred to the testimony of Henrietta Burton and Margaret. The testimony of the insurance company was to the effect that Margaret, as daughter of insured, was the designated beneficiary and that the amount of the policy, $3,000, was paid into court for distribution to those entitled thereto.

If the statement made by counsel for Roxiana should be taken "as an agreed statement of facts", as shown in the note of testimony, or that it is a "correct" statement of facts for evidentiary purposes, we would have no other alternative than to reverse the case and render a decree in favor of Roxiana. For the rule seems to be clearly established in this jurisdiction that an insured, having the unrestricted right to change the beneficiary in the policy at will, may assign the policy to his wife by way of gift *inter vivos,* and that "delivery by gift of the policy" to the wife "with the intent of vesting immediate ownership thereof in her, though without any writing to that effect" is "sufficient in equity to so invest it as against the named beneficiary." Jennings v. Jennings, 250 Ala. 130(1 & 2), 131, 132, 33 So.2d 251, 253, and cases there cited. However, on reading the record, we gain

548

the clear impression that the trial court's decision rested on the conception of law that the beneficiary designated in accord with the prescriptions of the policy is entitled to the proceeds thereof irrespective of any other disposition of the policy by the insured. It seems to us that the court premised the decree on such misconception of the law and not on a conclusion from the evidence that Roxiana was not the common-law wife of the insured or that there was not an *inter vivos* gift of the policy to her from the insured.

From what we have said it follows that the decree appealed from is due to be reversed and the cause remanded for further proceedings in the trial court. It is so ordered.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and CLAYTON, JJ., concur.